[No. 20066.  Department One.  February 14, 1927.]

ANNA E. WHITE, *Appellant*, v. MARTIN J. MALONEY,
*Respondent*.[1]

[1] FRAUD (9, 22)—MISREPRESENTATIONS—SALE OF OIL STOCK—EVI-
DENCE—SUFFICIENCY. Findings that there was no fraudulent
conspiracy in the sale of Wyoming oil stock are sustained,
where it appears that the company had "proved land," was pro-
ducing oil with fair prospects of success, and plaintiff purchased
stock after making a personal inspection without any misrepre-
sentations, and was satisfied until the price of crude oil
dropped and the company had financial difficulties.

Appeal from a judgment of the superior court for
Whitman county, Huneke, J., entered December 29,
1925, upon findings in favor of the defendant, in an
action for fraud, tried to the court.  Affirmed.

*C. E. H. Maloy* and *Voorhees & Canfield,* for appel-
lant.

*Hanna, Miller & Hanna* and *Le Roy McCann,* for
respondent.

MAIN, J.—The purpose of this action was to recover
damages which the plaintiff claims to have been sus-
tained by reason of a fraudulent conspiracy to which
it is alleged the defendant was a party.  The cause was
tried to the court without a jury and resulted in find-
ings of fact and conclusions of law denying a recovery.
From the judgment entered dismissing the action, the
plaintiff appeals.

[1]  The facts may be summarized as follows:  The
Osage-Upton Oil Company was a corporation organ-
ized under the laws of the state of South Dakota and
had qualified to do business in the state of Wyoming.
In June, 1925, it had an oil lease on two hundred and

[1]Reported in 253 Pac. 127.

forty acres of land near Osage, Wyoming, which was
what is called in the testimony "proved land." Upon
this two hundred and forty acres, there had been
erected a refinery with a capacity of one hundred bar-
rels per day, a pumping plant and the necessary stor-
age tanks. There were ten wells from which were
pumped from five to ten barrels of crude oil per day
and one which had been a flowing well producing in
the neighborhood of fifty barrels per day. There were
from one to three rigs during the summer and fall of
1922 boring new wells upon the two hundred and forty
acres. The company also had leases upon two thou-
sand acres of land in the vicinity of Osage, Wyoming,
and not a great distance from the two hundred and
forty acres, but this had not been developed and was
nothing more than a prospect at the time. It is re-
ferred to in the testimony as "wildcat," though classi-
fied as oil land. The company was incorporated for
one million shares, of the par value of one dollar per
share, one-half of which was treasury stock. The com-
pany had some responsible promoters and stockhold-
ers, one of whom was known to the defendant.

In the month of May, 1922, the directors of the com-
pany entered into a contract with one O. K. Wright,
by which he agreed to sell one hundred thousand shares
of the treasury stock of the company at one dollar per
share and was to receive a commission of twenty-five
cents per share. Wright, who was one of the directors
of the corporation, and E. Roy Townsend, who was a
stockholder, came to Spokane and vicinity for the pur-
pose of selling stock. While in Spokane, they met the
respondent who had lived for many years at Colfax.
A day or two after meeting the respondent, Wright
and Townsend went to Colfax and the respondent went
with them out to see the appellant, who was a widow
at the time and owned a ranch of approximately one

thousand acres upon which she resided. Upon this visit the appellant purchased two thousand shares of the stock at one dollar per share, giving her note therefor. The respondent at about the same time purchased two thousand shares at the same price. On all stock sold, Wright was dividing his commission with the respondent. Wright from time to time was endeavoring to induce the respondent to purchase more stock, which the respondent declined to do until he had made an examination of the property or had an examination made. The result was that Wright contributed fifty dollars and the respondent twenty-five dollars toward defraying the expense of one Henry Drum to visit the company's property and report thereon. Drum visited the property, spent some days there and made a decidedly favorable report. Thereafter the respondent purchased five thousand shares from one of the stockholders, paying two thousand five hundred dollars therefor.

During the latter part of August, 1922, the appellant purchased ten thousand additional shares at the same price per share that she had paid for the two thousand. When she made this purchase, Wright told her that, if she would visit the property and was dissatisfied with her investment, he could cause to be returned to her all of the money she had invested. Shortly after the first of September, the appellant in company with Wright went to Osage and spent a day or two investigating the property. As she was returning home she sent or approved a telegram to which her name was signed and addressed to the respondent, which read:

"Found everything in the field better than represented. The Osage Upton Oil Co. has a real bunch of men at the head of it and our dividends are a real sure thing. Will be in Spokane Friday morning."

After returning from this visit, the appellant did not cancel her former purchases, but purchased thirteen thousand additional shares, and placed a mortgage upon her farm for twenty-five thousand dollars to pay for all of the stock which she had acquired. About the first of January, 1923, the price of crude oil went down and the company had financial difficulties. The company at no time was making a profit, though it had continued to operate up to the time of the trial.

Some of the men connected with the company were men of means and substantial citizens of the communities in which they resided. It cannot be held that the company was a mere stock selling proposition. The men connected with it believed that they were going to make it a going and profitable enterprise.

Upon a number of vital matters in the case the testimony is in conflict. The evidence, as abstracted, covers approximately three hundred and twenty-five pages. It would be impossible without extending this opinion to great lengths, which would serve no useful purpose, to discuss the evidence in detail. The trial court found that

" . . . there was not any conspiracy such as set out in the complaint or at all entered into between defendant and O. K. Wright, and all representations made by defendant or that were made in his presence were substantially accurate and made in good faith and without any intent to defraud, and defendant, at all times covering the period plaintiff purchased her stock, had full confidence that the company would be a great financial success and bring large returns to the purchasers of stock on their investment."

After an attentive consideration of all the evidence we are unable to say that the trial court's findings were not supported thereby.

The judgment will be affirmed.

TOLMAN and MITCHELL, JJ., concur.